EDMONDS and another, Respondents, v. BOARD OF FIRE & POLICE COMMISSIONERS of the city of Milwaukee, Appellant.

*No. 320. Argued November 27, 1974.—Decided January 7, 1975.*
(Also reported in 224 N. W. 2d 575.)

For the appellant there were briefs by *James B. Brennon*, Milwaukee city attorney, and *Rudolph T. Randa*, assistant city attorney, and oral argument by *Mr. Randa*.

For the respondents there was a brief and oral argument by *Gerald P. Boyle* of Milwaukee.

WILKIE, C. J.   This appeal involves the review of a ruling by the trial court declaring certain proceedings of the appellant, Board of Fire & Police Commissioners of the city of Milwaukee, a nullity. The board had judged respondents, William D. Edmonds and Leonard Lesnieski, two Milwaukee policemen, guilty of "conduct unbecoming police officers" and ordered them suspended for six days. When the officers petitioned the circuit court for a writ of certiorari to review the board decision, the court issued the writ, declared the findings of guilty a nullity, and ordered the suspensions set aside. The board appeals.

The circumstances giving rise to the misconduct charges occurred on June 28, 1971, in Milwaukee's McGovern park. A complaint was filed with the board charging three Milwaukee policemen, identified only by

badge number, with improper conduct on that date and at that place. The complaint by Cleora and Donald Bost, citizens of Milwaukee, alleged that one policeman mishandled Mrs. Bost's daughter and restrained her from leaving the park. The complaint also charged that after repeated requests by the mother, the police officer turned the girl loose but, in the meantime, a crowd had gathered, yelling at the officer to let the child go. The complaint further charged that as the crowd moved in closer, more policemen arrived at the scene, surrounded the whole group, and ordered it to disperse. The officers allegedly grabbed individuals at random, telling them to move out. It was charged that one policeman said to an onlooker named LeRoy Allen, Jr., "Come on Bum, hit me, hit me, that's what I want you to do, so I can kill you." It was charged that Allen refused and that he was then grabbed and thrown against a wall by this officer and another who had allegedly drawn guns. There were further allegations that the officers threatened to beat up Allen's sister who tried to come to his aid, and that the officers told Mrs. Bost, "Oh get out of here before we kill all of you." It was alleged in this complaint that the policemen made derogatory and racist remarks to Allen and placed him and Mrs. Bost's daughter in a squad car and took them to the police station. The complaint did not contain any charges alleging misconduct occurring in the car or at the station.

A hearing was held before the board on this complaint as to two of the officers charged. There were several witnesses, including Mrs. Bost who, while presenting her case without assistance of counsel, testified in accordance with her complaint and identified the respondents as the officers who grabbed Allen at the park, drew their guns and made the threatening statement to her. Allen also testified, substantiating the allegations in the complaint concerning how he was grabbed, thrown to the wall and taunted with requests to hit the respondent Lesnieski.

He further testified that both respondents pulled their guns and that one pointed the gun at Allen's stomach. Allen also testified that after he was taken to the police station he was pushed, grabbed, and racially insulted. Three additional witnesses substantiated the testimony of both Mrs. Bost and Allen, but one of these witnesses did not remember seeing any guns drawn.

The respondents testified in their own defense. Both admitted being at McGovern park, trying to disperse the crowd, and scuffling with and arresting LeRoy Allen. Both said, however, that Allen had cursed and taken a swing at one of the officers, and both denied drawing their revolvers or using undue force to subdue and arrest Allen. In addition to respondents, five other witnesses, including three policemen and two bystanders, testified for the defense. All said they had seen no guns drawn. However, the three additional policemen apparently arrived at the scene too late to witness the scuffle with Allen. One of the bystanders said she did not even see the two respondents at the scene, and the other was 40 to 50 yards away and said he did not see the confrontation between Allen and the police.

After the hearing was concluded, the chairman of the board read the following:

". . . the Board having heard the testimony of the witnesses and the arguments of the persons represented by counsel and the persons in their own stead, and having been fully advised in the premises, now, by a vote of three to one, makes its findings as follows:

"That the complainant, Cleora Bost, is an adult and a resident of the City of Milwaukee.

"Two, that the complaint was filed on behalf of herself and a minor, LeRoy Allen, Jr., age sixteen.

"Three, that it was established by a preponderance of the evidence that the conduct of the accused officers toward one LeRoy Allen, Jr., and other persons present at the time of the incident alleged in the complaint, constituted conduct unbecoming police officers."

The following interchange then occurred between defense counsel and the chairman:

"*Mr. Boyle:* Well, may I ask for the purposes of the record, Mr. Chairman—the allegation of conduct unbecoming an officer, that is the finding of the Commission? There are no specific acts constituting that misconduct? "*The Chairman:* No."

Six days later, the respondents moved the board for a new hearing based on newly discovered evidence and also to make the finding of "conduct unbecoming an officer" more definite and certain.

The newly discovered evidence consisted of affidavits from two persons who had witnessed the McGovern park incident at close hand, had read about the board's decision in the paper and desired "to set the record straight as to what really happened." One affiant was employed by the park to supervise boat rentals, and the other was on a family picnic at the time. Both said they were less than 20 feet from the respondents at all times during the incident, that respondents did not pull any weapons or use any profane language, and that respondents used force only to restrain a child and take him to the squad car. The board denied both defense motions, with the chairman stating as a reason that its decision to find the officers guilty did not depend "on whether a specific act did or did not occur," but rather was based upon "the totality of the conduct of the accused officers."

The respondents petitioned the circuit court for Milwaukee county for a writ of prohibition and the Hon. JOHN A. DECKER presiding for the circuit court ordered the board to reconsider its denial of the motion for a further hearing on the grounds of the alleged newly discovered evidence. After the board reconsidered the matter on the basis of the five standards applicable to motions for new trials based on newly discovered evi-

dence in civil cases,[1] the board reiterated its position and denied the further hearing.

After the court dissolved its previous order restraining the board from proceeding further, the board itself held a punishment hearing with 11 character witnesses appearing on behalf of the respondents, and then ordered each respondent to be suspended from work for a period of six days.

The respondents appealed the board's decision to the circuit court for Milwaukee county. Later this appeal was abandoned and the respondents shifted their request for a review to a petition for a writ of certiorari. The circuit court issued the writ and ordered an outright dismissal of the charges against the respondents and it is from that order that the board now appeals.

Two preliminary issues are presented:

1. Is the circuit court's order appealable?

2. To what extent is the judgment issued by the circuit court, Judge JOHN A. DECKER presiding, res adjudicata as to the claims asserted by the respondents in the certiorari proceeding later brought in the circuit court for Milwaukee county?

The order is appealable.

---

[1] As recently enunciated in *Naden v. Johnson* (1973), 61 Wis. 2d 375, 384, 212 N. W. 2d 585:

"The rules governing the granting of a new trial are of long standing. They are: (1) The evidence must have come to the moving party's knowledge after a trial; (2) the moving party must not have been negligent in seeking to discover it; (3) the evidence must be material to the issue; (4) the testimony must not be merely cumulative to the testimony which was introduced at the trial; and (5) it must be reasonably probable that a different result would be reached on a new trial."

*Cf. Moore v. Industrial Comm.* (1958), 4 Wis. 2d 208, 218, 89 N. W. 2d 788, where the court said that if the commission refused to reopen a case because of newly discovered evidence, its decision would not be reversed except upon a showing of a "flagrant abuse of discretion."

In the first place, the matter was brought by certiorari to the circuit court. This procedure is sanctioned by what we said in *State ex rel. Kaczkowski v. Fire & Police Comm.*,[2] as follows:

". . . We hold, therefore, that certiorari is available to review orders of the board of fire and police commissions under ch. 586, Laws of 1911, when it is alleged that the board acted beyond its jurisdiction or that it proceeded upon an incorrect theory of the law."[3]

This court also noted, however:

". . . we wish to point out that this remedy should be used sparingly and only when those errors clearly appear."[4]

Thus, the trial court had certiorari jurisdiction to review the board's decision as to any errors of law.

In the circuit court, the respondents' challenge to the board's action was on two principal grounds: The board's findings were not sufficiently explicit and the board erred in refusing to hold a further hearing. Both questions present issues of law, and as such were properly determined on certiorari. In turn, since these are issues of law, that determination is reviewable on appeal to this court insofar as it pertains to questions of law only.

The second preliminary issue arises from the fact that in seeking a writ of prohibition from the circuit court with Judge JOHN A. DECKER presiding, respondents argued that the board's findings were insufficiently specific and that the board erred in not granting a further hearing. Although the petition was dismissed "on its merits," the board now argues that that determination was res adjudicata as to the respondents' claims in the certiorari proceedings. The board's contentions are with-

---

[2] (1967), 33 Wis. 2d 488, 148 N. W. 2d 44, 149 N. W. 2d 547, certiorari denied, 389 U. S. 848, 88 Sup. Ct. 91, 19 L. Ed. 2d 118.
[3] *Id.* at pages 501, 502.
[4] *Id.* at page 504.

out merit. In the first place, the issue was not raised below [5] and for that reason alone cannot be raised here.[6] Furthermore, the basis for the dismissal by the trial court of the petition for the writ of prohibition is unclear and we cannot hold, under these circumstances, that the judgment signed by the trial court (Judge DECKER presiding) is proof that the precise issues here were litigated previously.

The substantial issue raised here is whether the findings made by the board are sufficiently definite and certain. They are not. We are not concerned with the adequacy of the charges against the respondents prior to the hearing. The respondents make no contention here that these charges were so vague that they could not properly prepare to meet these charges.[7] The narrow question here is whether the board must state specific findings of fact and conclusions of law. The board here did not specify what particular wrongful acts the respondents performed, or why such acts constitute "conduct unbecoming an officer" under the circumstances. Moreover, the board did not make any separate findings as to each defendant, although it did impose an identical punishment on each. There is no question in our view that the findings must be more specific as to the conduct that is held to be unbecoming and also that the board must make separate findings as to each respondent.

[5] *Alexopoulos v. Dakouras* (1970), 48 Wis. 2d 32, 37, 179 N. W. 2d 836.

[6] *Gerlach v. Thiem* (1973), 58 Wis. 2d 113, 122, 205 N. W. 2d 779.

[7] *Cf. State ex rel. Momon v. Milwaukee County Civil Service Comm.* (1973), 61 Wis. 2d 313, 212 N. W. 2d 158; *State ex rel. Richey v. Neenah Police & Fire Comm.* (1970), 48 Wis. 2d 575, 180 N. W. 2d 743. *See: Parker v. Levy* (1974), 417 U. S. 733, 94 Sup. Ct. 2547, 41 L. Ed. 2d 439; *Bence v. Breier* (7th Cir. 1974), 501 Fed. 2d 1185, holding the Milwaukee Police and Fire Commission rule against "conduct unbecoming a member and detrimental to the service" unconstitutionally vague.

Since the board is not an agency of the state government, its procedures are not governed by ch. 227, Stats., the Administrative Procedure Act.[8] Sec. 227.13 of the act imposes this requirement on state agencies:

"**Decisions.** Every decision of an agency following a hearing shall be in writing accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise and separate statement of the ultimate conclusions upon each material issue of fact without recital of evidence."

The Milwaukee Board of Police and Fire Commissioners is governed, however, by ch. 21 of the Milwaukee City Charter. Sec. 21.12 of the Charter provides:

"**Determination on charges.** Within three days after hearing the matter the board shall, by a majority vote of its members, determine whether by a preponderance of the evidence the charges are sustained. If the board shall determine that the charges are sustained they shall at once determine whether the good of the service requires that the accused shall be permanently discharged or shall be suspended without pay for a period not exceeding sixty days or reduced in rank. If the charges shall not be sustained the accused shall be immediately reinstated in his former position, without prejudice. *The decision and findings of the board shall be in writing* and shall be filed, together with a transcript of the evidence, with the secretary of the board." (Emphasis added.)

A similar provision is contained in sec. 62.13 (5) (f), Stats., which applies to other than first class cities:

"(f) Findings and determinations hereunder and orders of suspension, reduction, suspension and reduction, or removal, shall be in writing and, if they follow a hearing, shall be filed within 3 days thereof with the secretary of the board."

---

[8] The various requirements of ch. 227, Stats., are imposed upon "agencies." Sec. 227.01, Stats., defines "agency" to be: "any board, commission, committee, department or officer *in the state government* . . . ." (Emphasis supplied.)

In several cases the United States Supreme Court has held that a statement of reasons for the adjudicatory decision reached is an important element of a due process hearing. In the 1963 case of *Willner v. Committee on Character* [9] a bar applicant was denied admission because of a state bar committee decision that he did not have the requisite "good character." The United States Supreme Court held the applicant was entitled to receive a statement of reasons for his rejection, in part to allow him to have meaningful judicial review. The court said:

". . . '[t]he requirements of fairness are not exhausted in the taking or consideration of evidence but extend to the concluding parts of the procedure as well as to the beginning and intermediate steps.' . . ." [10]

In other recent decisions the United States Supreme Court has held that a statement of reasons must be provided following a hearing and adjudicatory decision resulting in termination of welfare benefits,[11] revocation of parole,[12] and deprivation of good time credits by prison authorities.[13]

---

[9] (1963), 373 U. S. 96, 83 Sup. Ct. 1175, 10 L. Ed. 2d 224. In this case, the applicant was never informed of the basis of the finding of bad character and thus was unable to challenge the finding either before the committee or in court.

[10] *Id.* at page 105.

[11] *Goldberg v. Kelly* (1970), 397 U. S. 254, 271, 90 Sup. Ct. 1011, 25 L. Ed. 2d 287 ("the decision-maker's conclusion as to a recipient's eligibility must rest solely on the legal rules and evidence adduced at the hearing. . . . To demonstrate compliance with this elementary requirement, the decision maker should state the reasons for his determination and indicate the evidence he relied on . . . though his statement need not amount to a full opinion or even formal findings of fact and conclusions of law.")

[12] *Morrissey v. Brewer* (1972), 408 U. S. 471, 489, 92 Sup. Ct. 2593, 33 L. Ed. 2d 484 ("minimum requirements of due process . . . include . . . a written statement by the factfinders as to the evidence relied on and the reasons for revoking parole.")

[13] *Wolff v. McDonnell* (1974), 418 U. S. 539, 94 Sup. Ct. 2963, 2979, 41 L. Ed. 2d 935.

These decisions require a statement of findings as a matter of procedural due process. Professor Kenneth Culp Davis, a nationally known authority on administrative law, persuasively argues that there are at least five practical reasons for requiring findings simply as a matter of common law.[14]

First, findings facilitate judicial review by allowing the court to focus its attention on the actual basis for the decision and the evidentiary support therefor. Second, requiring findings serves the goal of limited judicial review. The reviewing court is not required to supply its own factual conclusions through a de novo search of the record. This point is particularly important where the reviewing court concludes the agency applied the wrong rule of law to the case. Third, findings help prevent arbitrary decision making. Where administrators have to state the factual basis for a decision that may be subject to close scrutiny in subsequent judicial proceedings, they are bound to take more care in arriving at their determination. Fourth, Davis suggests findings help parties plan their cases for judicial review or rehearing. Moreover, he asserts, parties have a right to be informed of why they lost. Finally, Davis argues that requiring agencies to state findings allows reviewing courts to keep the agencies within their jurisdiction.

---

[14] Davis, *Administrative Law Text* (3d ed.), p. 319, ch. 16, sec. 16.02:

"At one time the Supreme Court put the requirement of findings on a constitutional base, and some state courts also did. But because courts themselves often have resolved issues without making findings of fact, the notion that due process requires findings could not and did not survive.

"The requirement of administrative findings was created by courts in the process of deciding cases on judicial review of administrative action. Like much of the rest of administrative law, the findings requirement is a part of the common law." *See generally, id.,* chapter 16.

In the instant case, the factual basis of the board's decision is unknown. Conflicting testimony was presented at the hearing concerning various allegedly wrongful acts performed by the respondents. The respondents themselves do not know what the board felt they did wrong. Moreover, in denying the motion for a further hearing, the board indicated it had relied on testimony concerning wrongful activity occurring in the squad car and at the police station, acts not even listed in the complaint.

We conclude that the case should be remanded to the board for the board to separately state as to each respondent, specific findings of fact and conclusions of law in the manner prescribed for state agencies by sec. 227.13, Stats.

We realize that the 1945 case of *State ex rel. Heffernan v. Board* [15] reaches a different conclusion than we do here, holding as it did that in a case of police discipline, findings were not required more than a "mere determination of guilt or innocence." [16] We think that the findings should be more explicit and we therefore overrule anything to the contrary in *State ex rel. Heffernan v. Board.*

The respondents also argue on this appeal that the board's refusal to reopen the hearing denied them their due process rights to a fair hearing, as held by the circuit court. The precise question is whether the board properly applied the correct legal standards in reaching its decision, since there is no question that the board had the power to grant respondents' motion to reopen the hearing to take the additional testimony of the two new witnesses. We hold that the board, in applying the same standards that a trial court would apply in assessing a motion for a new trial grounded on newly discovered evidence, was acting on proper legal standards. [17] We also hold that the

[15] (1945), 247 Wis. 77, 18 N. W. 2d 461.

[16] *Id.* at page 85.

[17] The standards are set forth in footnote 1, *supra.*

board acted properly in concluding that a new hearing was not warranted in view of the fact that the purported new testimony concerned only part of the alleged wrongful conduct and therefore would not necessarily bring about a different result from that reached at the full hearing.

*By the Court.*—Order reversed and cause remanded for further proceedings not inconsistent with this opinion.