Kevin Blum, Jr., by his Guardian ad Litem,
Jason Studinski, Plaintiff-Appellant,†

WEA Insurance Corporation,
Involuntary-Plaintiff,

v.

1st Auto & Casualty Insurance Company,
Defendant-Respondent.

Court of Appeals

*No. 2008AP1324. Submitted on briefs October 8, 2008.
—Decided December 4, 2008.*

2009 WI App 19

(Also reported in 762 N.W.2d 819.)

† Petition to review filed.

822

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Timothy M. Barber, J. Michael Riley*, and *Jason Knutson* of *Axley Brynelson, LLP*, Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Rick J. Mundt* and *Chet Holzbauer* of *Winner, Wixson & Pernitz*, Madison.

Before Dykman, Vergeront and Bridge, JJ.

¶ 1. VERGERONT, J. The issue on this appeal is the proper construction of the uninsured motorist (UM) provision in an insurance policy as applied to the situation in which the alleged tortfeasor who operated the motor vehicle was insured but the vehicle was not insured. We conclude that the policy provision is ambiguous because the title of the UM section is "Uninsured Motorist" while the insuring clause defines coverage in terms of an "uninsured motor vehicle." We also conclude that we should resolve the ambiguity consistent with the way in which the court in *Hull v. State Farm Mutual Automobile Insurance Co.*, 222 Wis. 2d 627, 586 N.W.2d 863 (1998), resolved the ambiguity created by those same two terms in WIS. STAT. § 632.32(4)(a)1. (2005–06),[1] the statute that requires UM coverage. Accordingly, we resolve the ambiguity in the policy language by holding that the policy does not provide UM coverage because the allegedly negligent operator of the vehicle was covered by liability insur-

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

ance. We therefore affirm the circuit court's summary judgment in which it holds that the policy does not provide UM coverage.

## BACKGROUND

¶ 2.   The facts relevant to this appeal are undisputed. Blum was seriously injured when, after he jumped on the hood of the vehicle driven by Nicholas Burch in the high school parking lot, Burch accelerated and then applied the brakes, causing Blum to fall off and strike his head on the curb. Burch's father owned the vehicle and it was uninsured. However, Burch carried liability insurance under a policy issued by American Standard Insurance Company. Blum entered into an agreement releasing both Burch and American Standard in exchange for the policy's liability limits of $250,000.

¶ 3.   1st Auto & Casualty Insurance Company had issued Blum's parents an automobile insurance policy which was in effect at the time of the accident. The policy contained a section on UM coverage that stated:

## PART C—UNINSURED MOTORIST

INSURING AGEEMENT

A.   We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury**:

1.   Sustained by any **insured**; and

2.   Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle**.

826

Blum was included in the policy definition of an "insured" for this coverage because he was a family member.[2] The policy definition of an "uninsured motor vehicle" as relevant to this appeal is a vehicle "[t]o which no bodily injury . . . policy applies at the same time of the accident."

¶ 4. Blum filed this action against 1st Auto seeking UM benefits, and 1st Auto moved for summary judgment. 1st Auto contended that the UM section did not provide coverage because, although the vehicle Burch drove was uninsured, Burch was insured. Blum argued that the plain language of the section provides coverage because the vehicle is an uninsured vehicle as defined in the policy.

¶ 5. The circuit court agreed with 1st Auto and granted summary judgment in its favor.

## DISCUSSION

¶ 6. On appeal, Blum renews his argument that the plain language of the policy provides UM coverage. Relying primarily on *Hull*, 1st Auto responds that Blum's construction is unreasonable because it is inconsistent with the fundamental purpose of UM coverage and does not comport with the reasonable expectation of an insured.

---

[2] Section B of the policy on uninsured motorist coverage provides:

B. **Insured** as used in this Part means:

1. **You** or any **family member**.

2. Any other person **occupying your covered auto**.

3. Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies, sustained by a person described in **1.** or **2.**

¶ 7.   We review de novo the grant and denial of summary judgment, employing the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–15, 401 N.W.2d 816 (1987). Where, as here, the facts are undisputed, the issue is which party is entitled to judgment as a matter of law. *See* WIS. STAT. § 802.08(2).

■

¶ 8.   Generally, we interpret insurance policies according to the rules of contract construction. *Hull*, 222 Wis. 2d at 636. If the meaning of the policy language is plain, we apply that meaning. *Id.* at 637. If there is an ambiguity, that is, if the policy language may reasonably be interpreted in more than one way, then we resolve the ambiguity by determining what a reasonable person in the position of the insured would understand the words to mean. *Taylor v. Greatway Ins. Co.*, 2001 WI 93, ¶ 10, 245 Wis. 2d 134, 628 N.W.2d 916. Put somewhat differently, the "interpretation of language in an insurance policy should advance the insured's reasonable expectations of coverage." *Id.*

¶ 9.   We begin with a discussion of *Hemerley v. American Family Mutual Insurance Co.*, 127 Wis. 2d 304, 379 N.W.2d 860 (Ct. App. 1985) *overruled by Hull v. State Farm Mutual Automobile Insurance Co.*, 222 Wis. 2d 627, 586 N.W.2d 863 (1998).[3] In *Hemerley* we

---

[3] As we explain in paragraphs 14–17, *infra,* the supreme court in *Hull v. State Farm Mutual Automobile Insurance Co.*, 222 Wis. 2d 627, 586 N.W.2d 863 (1998), overruled the construction of WIS. STAT. § 632.32(4)(a) in *Hemerley v. American Family Mutual Insurance Co.*, 127 Wis. 2d 304, 379 N.W.2d 860 (Ct. App. 1985), but did not either explicitly or implicitly disapprove of certain other rulings the *Hemerley* court made in the context of construing insurance policy language.

addressed a UM policy provision that was titled "Uninsured Motorist Coverage" and promised to "pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle." 127 Wis. 2d at 309. Just as in this case, "uninsured motor vehicle" was defined in that policy to mean a motor vehicle "not insured by a bodily injury liability bond or policy at the time of the accident." *Id.* Also, as in this case, the alleged tortfeasor was the operator of a vehicle that he did not own and that was not covered by insurance, but the operator was insured under a liability policy. *Id.* at 306.

¶ 10. In *Hemerley* we first considered WIS. STAT. § 632.32(4)(a) which provides:

> (4) Required uninsured motorist and medical payments coverages. Every policy of insurance subject to this section that insures with respect to any motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall contain therein or supplemental thereto provisions approved by the commissioner:
>
> (a) Uninsured motorist.
>
> 1. For the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, in limits of at least $25,000 per person and $50,000 per accident.
>
> 2. In this paragraph "uninsured motor vehicle" also includes:

   a. An insured motor vehicle if before or after the accident the liability insurer of the motor vehicle is declared insolvent by a court of competent jurisdiction.

   b. An unidentified motor vehicle involved in a hit-and-run accident.

   3. Insurers making payment under the uninsured motorists' coverage shall, to the extent of the payment, be subrogated to the rights of their insureds.

We concluded that reasonable persons could read § 632.32(4) "either to require coverage to protect persons injured by a motor vehicle which is not insured, or to require coverage to protect persons injured when the vehicle's owner or operator has no insurance." *Id.* at 308. We arrived at this conclusion because the statute referred both to "uninsured motor vehicle" in subds. (4)(a)1. and 2., and to "uninsured motorist" in subd. (4)(a)3. and the introductory paragraph in subsec. (4) did not clarify which was intended. *Id.* We resolved the ambiguity by construing "uninsured motor vehicle" in § 632.32(4)(a)1. to mean "a vehicle, neither the owner nor the operator of which is insured by liability insurance." *Id.*

   ¶ 11.   In *Hemerley* we next took up the meaning of the policy provision and came to two conclusions important to this appeal. First, we decided that the title of "Uninsured Motorist Coverage" followed by reference in the insuring clause to "uninsured motor vehicle" created an ambiguity.[4] Second, we decided that, because

   [4] In *Hemerley*, we did not consider the title of Wis. Stat. § 632.32(4), "Required Uninsured Motorist and Medical Payments Coverages," in construing the statute because of the principle that titles to subsections of statutes are not part of the statute and cannot be considered when determining whether a

830

this is the type of coverage required by Wis. Stat. § 632.32(4), "[a] reasonable person would understand the words in the policy to provide the coverage contemplated by the statute" and we "ought therefore to resolve the policy ambiguity as we do the statutory ambiguity." *Id.* at 309–10.

¶ 12. In *Hull*, 226 Wis. 2d at 646, the supreme court overruled the *Hemerley* construction of Wis. Stat. § 632.32(4)(a).[5] The *Hull* court agreed with our conclusion in *Hemerley* that reasonable persons could read § 632.32(4)(a) either to require coverage to protect persons injured by a motor vehicle which is not insured or to require coverage to protect persons injured when a motor vehicle's owner or operator has no insurance.

---

statute is ambiguous. 127 Wis. 2d at 307. However, we stated, that principle does not apply to the construction of contracts, where the general rule is that we give some meaning to each sentence, phrase, or word. *Id.* at 309.

[5] The court in *Hull,* also construed the definition of "uninsured motor vehicle" in that insurance policy, but on a point not relevant to this appeal. The disputed language in that policy definition was "a vehicle, the ownership, maintenance or use of which is not insured." *Id.* at 637–38. The insurer argued that "or" should be interpreted in the conjunctive, while the insured argued that it should be interpreted in the disjunctive. *Id.* The court concluded that the word "or" plainly conveyed that "ownership," "maintenance," and "use" were alternatives, because "or" was commonly used as a disjunctive connector. *Id.* at 638–39. The result was that there was uninsured motorist coverage under the policy because, while the vehicle was insured for use, it was not insured for maintenance. *Id.* at 639–40. Although the *Hull* court concluded that there was coverage under the policy, it took up the issue whether the insured was entitled to UM coverage under Wis. Stat. § 632.32(4) in order to provide guidance to courts and litigants. *Id.* at 640 n.7.

*Id.* at 643–44. The *Hull* court therefore concluded, as we did in *Hemerley*, that the term "uninsured motor vehicle" in § 632.32(4)(a)1. was ambiguous. *Id.* at 644. However, the *Hull* court disagreed with the *Hemerley* resolution of this ambiguity.

¶ 13.   To resolve the ambiguity in the statute, the *Hull* court considered the purpose of uninsured motorist coverage as expressed in the case law. "In prior cases this court has viewed the statutorily required uninsured motorist coverage provision as if it were the liability coverage of the tortfeasor . . . . Thus uninsured motorist coverage essentially substitutes for insurance that the tortfeasor should have had . . . ." *Id.* at 644–45 (citations omitted). Stated another way, the *Hull* court said, "the legislative purpose of Wis. Stat. § 632.32(4) is to place the insured in the same position as if the uninsured motorist had been insured." *Id.* at 645 (citation and footnote omitted). The *Hull* court concluded that the only way in which this legislative purpose could be served in the situation before it—where both the owner and the operator were potential tortfeasors but there was coverage only for the operator's negligent use, not for the owner's negligent maintenance—was to construe the statute to require UM coverage "whenever *either* the owner *or* the operator of a motor vehicle is allegedly negligent and is not covered by liability insurance."[6] *Id.* at 646 (emphasis added).

¶ 14.   *Hull* does not separately address our construction of the policy language in *Hemerley*. That policy construction is necessarily in error because it relies on our construction of Wis. Stat. § 632.32(4)(a), which the

---

[6] In *Hull* the insured sought UM coverage for the owner's alleged negligent maintenance of his truck. *Id.* at 632–33. The owner did not have any insurance covering the truck or its operation, but the operator's use of the vehicle was insured. *Id.*

*Hull* court overruled. However, the *Hull* court's ruling on the construction of the statute does not implicate either our conclusion in *Hemerley* that the policy language was ambiguous or our conclusion that a reasonable person would understand the words in the policy to provide the coverage contemplated by the statute that mandates the coverage.

¶ 15.  We have held that ordinarily holdings in our opinions not specifically reversed by the supreme court retain precedential value. *Sweeney v. Gen. Cas. Co.*, 220 Wis. 2d 183, 192–93, 582 N.W.2d 735 (Ct. App. 1998). We applied this rule in *Sweeney, id.*, and also in *Ten Mile Investments v. Sherman*, 2007 WI App 253, ¶¶ 15–16, 306 Wis. 2d 799, 743 N.W.2d 442, *State v. Jones*, 2002 WI App 196, ¶ 40, 257 Wis. 2d 319, 651 N.W.2d 305, and *Peace Lutheran Church v. Village of Sussex*, 2001 WI App 139, ¶ 15 n.5, 246 Wis. 2d 502, 631 N.W.2d 229. We recognized it as the general rule in *Spencer v. County of Brown*, 215 Wis. 2d 641, 650, 573 N.W.2d 222 (Ct. App. 1997), but did not apply it because the supreme court had emphasized that, although it was not reaching the particular issue, its "decision should not be taken as approval of the reasoning of the court of appeals on that issue." *Id.* at 650–51 (quoting *Anderson v. City of Milwaukee*, 208 Wis. 2d 18, 37 n.17, 559 N.W.2d 563 (1997)). Similarly, we did not apply the rule in *State v. Byrge*, 225 Wis. 2d 702, 717 n.7, 594 N.W.2d 388 (Ct. App. 1999), because we were not sure this rule should apply "when the message from the supreme court is that the court of appeals should not even have addressed the issue in the first instance."[7]

---

[7] As we noted in *State v. Byrge*, 225 Wis. 2d 702, 717 n.7, 594 N.W.2d 388 (Ct. App. 1999), we certified this question to the supreme court, but the supreme court did not accept certification.

¶ 16.   We note that the above cases involve situations in which the court of appeals opinions were reversed on appeal. They do not involve the situation here, in which the supreme court overruled a court of appeals opinion in the context of reviewing another court of appeals opinion. However, we see no basis for distinguishing between these two situations as a general matter. The critical issue in both situations is the same: whether there is anything in the supreme court opinion reversing or overruling a court of appeals opinion on a particular ground or grounds that suggests the supreme court does not agree with other portions of the opinion.[8]

■

¶ 17.   In this case, we see no reason not to apply the general rule. The supreme court in *Hull* neither expressly nor implicitly expressed disapproval of our conclusion in *Hemerley* that the use of "Uninsured Motorist Coverage" in the title with the use of "uninsured motor vehicle" in the insuring clause created an ambiguity. Indeed, this conclusion is consistent with the *Hull* court's conclusion that the use of both terms in Wis. Stat. § 632.32(4)(a) created an ambiguity. *See Hull,*

---

[8] In *State v. Harris*, 2004 WI 64, ¶ 11 n.6, 272 Wis. 2d 80, 680 N.W.2d 737, the supreme court stated that it has not decided "whether a portion of a court of appeals decision that is not discussed when the opinion is overruled on other grounds is still precedential. *See State v. Gary M.B.*, 2004 WI 33, ¶ 44 n.1, 270 Wis. 2d 62, 676 N.W.2d 475 (Abrahamson, C.J., dissenting) [(expressing disagreement with the rule the court of appeals has applied)]." Because the supreme court has not decided this issue, we continue to follow the cases cited in paragraph 15, *supra. See Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997) (the court of appeals does not have the power to overrule, modify, or withdraw language from a published opinion of the court of appeals).

834

222 Wis. 2d at 643–44. As for our conclusion in *Hemerley* that a reasonable person would understand the words in the policy to provide the coverage contemplated by the statute that requires the coverage, we see in *Hull* no express or implicit disapproval of this. Accordingly, we conclude these two holdings in *Hemerley* remain precedential, and we apply them here.

¶ 18.  As noted above, the use of "uninsured motorist" in the title of the UM section, the relevant portion of the insuring clause, and the relevant definition of "uninsured motor vehicle" are the same in 1st Auto's policy as in the *Hemerley* policy. Following *Hemerley*, we conclude the reference to "uninsured motorist" in the title of the UM section of 1st Auto's policy and the reference to "uninsured motor vehicle" in the insuring clause create an ambiguity. Reasonable persons could differ on whether there is UM coverage when the alleged tortfeasor operating the motor vehicle has liability coverage but the vehicle is not covered by a liability policy.

¶ 19.  Following *Hemerley*, we resolve this ambiguity in the same way the ambiguity of the same terms in Wis. Stat. § 632.32(4)(a) is resolved, looking to *Hull* for the correct resolution of this statutory ambiguity. *Hull* holds that § 632.32(4)(a) requires UM coverage whenever either the owner or the operator of a motor vehicle is allegedly negligent and not covered by liability insurance, and it arrives at this construction by considering the purpose of the statute to place the insured in the same position as if the uninsured motorist had been insured. 222 Wis. 2d at 645–46. We conclude § 632.32(4)(a) does not require coverage where, as here, the alleged tortfeasor is the operator of the vehicle and is

covered by liability insurance. Following *Hemerley*, we conclude a reasonable insured would understand that "uninsured motorist" coverage under the policy has the same meaning as that term in § 632.32(4)(a), the statute that mandates this coverage in the policy.

¶ 20.    Blum's arguments that there is UM coverage under 1st Auto's policy do not persuade us. Blum contends that the meaning of the insuring clause and the definition of "uninsured motor vehicle" in 1st Auto's policy is plain and we must apply it. However, this argument does not take into account the title of the section, which we must also consider. *See Hemerley*, 127 Wis. 2d at 309.

¶ 21.    Blum also argues that an insurer may, through policy language, expand UM coverage beyond the minimum required by Wis. Stat. § 632.32(4). Blum relies on *Fletcher v. Aetna Casualty & Surety Co.*, 165 Wis. 2d 350, 357, 477 N.W.2d 90 (Ct. App. 1991). In *Fletcher* we concluded the policy language excluding certain types of vehicles from UM coverage was ambiguous as applied to a dune buggy. *Id.* at 355–56. We rejected the insurer's argument that, because a dune buggy did not come within the definition of "motor vehicle" in § 632.32(2)(a), we should construe the policy language not to provide coverage. *Id.* at 356. We distinguished cases holding that, when a statute prescribed details to be included in a policy, the rule of liberal construction in favor of the insured did not apply to these details. *Id.* at 357. We explained that the "precise policy language we [were] concerned with . . . [was] not part of a statutory policy, that is, it [was] not required by law" and that "an insurance policy may expand but not reduce the coverage required by the uninsured motorist statute." *Id.*

836

¶ 22. We do not find our reasoning in *Fletcher* applicable in this case. The policy language creating the ambiguity in *Fletcher* was not the same language used in the statute. In this case the terms "uninsured motorist" and "uninsured motor vehicle" that create the ambiguity in the policy are the same terms that the *Hull* court concluded created an ambiguity in the statute.

## CONCLUSION

¶ 23. We conclude that Blum was not entitled to UM coverage under the policy because the allegedly negligent operator of the vehicle was covered by liability insurance. Accordingly, we affirm the circuit court's grant of summary judgment in favor of 1st Auto.

*By the Court.*—Judgment affirmed.