Kevin Blum, Jr., by his Guardian ad Litem,
Jason Studinski,
Plaintiff-Appellant-Petitioner,

WEA Insurance Corporation,
Involuntary-Plaintiff,

v.

1st Auto & Casualty Insurance Company,
Defendant-Respondent.

Supreme Court

*No. 2008AP1324. Oral argument February 10, 2010.
—Decided July 14, 2010.*

2010 WI 78

(Also reported in 786 N.W.2d 78.)

731

For the plaintiff-appellant-petitioner there were briefs by *J. Michael Riley, Timothy M. Barber, and Axley Brynelson, LLP,* Madison, and oral argument by *J. Michael Riley.*

For the defendant-respondent there was a brief by *Rick J. Mundt, Chet Holzbauer, and Winner, Wixson & Pernitz,* Madison, and oral argument by *Rick J. Mundt.*

An amicus curiae brief was filed by *Lynn R. Laufenberg and the Laufenberg Law Group, S.C.,* Milwaukee, on behalf of the Wisconsin Association for Justice.

An amicus curiae brief was filed by *James A. Friedman, Bryan J. Cahill, and Godfrey & Kahn, S.C.,* Madison, on behalf of the Wisconsin Insurance Alliance.

¶ 1. DAVID T. PROSSER, J. This is a review of a published decision of the court of appeals, *Blum v. 1st*

*Auto & Casualty Insurance Co.*, 2009 WI App 19, 315 Wis. 2d 822, 762 N.W.2d 819, affirming an order of the Circuit Court for Sauk County, Guy D. Reynolds, Judge. The circuit court granted summary judgment to 1st Auto & Casualty Insurance Company (1st Auto) on grounds that Kevin Blum (Blum) was not entitled to the uninsured motorist (UM) coverage in his policy because the owner of the uninsured vehicle involved in an accident involving Blum was not negligent, while the negligent operator of that vehicle was insured. The court of appeals affirmed, reasoning that although the UM policy provision was ambiguous, Wis. Stat. § 632.32(4)(a) (2005–06)[1] does not mandate coverage when the alleged tortfeasor in an automobile accident is insured, and a reasonable person would not expect to receive more UM coverage than contemplated by the statute. Accordingly, it held that the policy did not provide UM coverage for Blum under these facts.

¶ 2. In its analysis, the court of appeals relied on holdings in *Hemerley v. American Family Mutual Insurance Co.*, 127 Wis. 2d 304, 379 N.W.2d 860 (Ct. App. 1985), a decision that this court expressly overruled in *Hull v. State Farm Mutual Automobile Insurance Co.*, 222 Wis. 2d 627, 586 N.W.2d 863 (1998). The court of appeals reasoned that *Hemerley* could still be used as precedent for holdings that had not been specifically overruled by this court.

¶ 3. We conclude the following:

A. The UM policy in this case is unambiguous and does not provide UM coverage when the owner of an

---

[1] All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated. Wis. Stat. § 632.32 was recently amended by 2009 Wis. Act 28, §§ 3154–55. These changes were effective November 1, 2009, and therefore do not affect the outcome of this case.

uninsured motor vehicle was not negligent. The provisions on liability in the UM policy, read separately or as a whole, do not contemplate coverage when the owner of an uninsured motor vehicle is not negligent and has no other basis of liability for an accident.

B. Former Wis. Stat. § 632.32(4) did not mandate coverage in a situation where the sole alleged tortfeasor was insured and his insurance equaled the level of UM coverage in the injured insured's policy.

C. A court of appeals decision loses all precedential value when it is overruled by this court. Although the court of appeals correctly concluded that UM coverage was unavailable on these facts, it should not have relied on *Hemerley* to reach this conclusion because that decision no longer possessed any precedential value.

¶ 4. Accordingly, we affirm the decision of the court of appeals.

## I. BACKGROUND AND PROCEDURAL HISTORY

¶ 5. The facts of this case are undisputed. Kevin Blum was seriously injured after jumping on the hood of a pickup truck driven by Nicholas Burch (Nicholas). Nicholas accelerated the truck, then applied the brakes, causing Blum to be thrown off the vehicle and to strike his head on the curb. Blum's counsel describes the resulting injuries as catastrophic.

¶ 6. The pickup was owned by Nicholas's father, Bruce Burch (Bruce), who did not have an insurance policy on the vehicle at the time of the accident. Nicholas himself was covered by a liability insurance policy with American Standard Insurance Company (American Standard). Prior to this lawsuit, Blum released Nicholas and American Standard from further liability in exchange for a settlement of $250,000, the maximum under American Standard's liability limits.

735

¶ 7. At the time of the accident, Blum was covered by a family insurance policy from 1st Auto. Under Part C of the policy, entitled "Uninsured Motorist", paragraph A of the Insuring Agreement provided:

> A. We will pay compensatory damages which an *insured* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle* because of *bodily injury:*
>
> 1. Sustained by any *insured;* and
>
> 2. Caused by an accident.
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the *uninsured motor* vehicle.
>
> . . . .
>
> *Uninsured motor vehicle* means a land motor vehicle or *trailer* of any type:
>
> 1. To which no *bodily injury* liability bond, or policy applies at the same time of the accident.

¶ 8. After discovering that Bruce had no insurance for the pickup, Blum's attorney, Lee Atterbury, gave 1st Auto notice of a claim under the UM provision of the 1st Auto policy. A claims representative responded to Atterbury, inquiring into his theory of liability regarding the negligence of the vehicle owner. In response, Atterbury claimed that Bruce had negligently entrusted the vehicle to Nicholas. 1st Auto did not pay the claim.

¶ 9. Blum sued, seeking compensation for UM benefits. 1st Auto moved for summary judgment on the ground that its UM coverage is not available where the negligent operator of a vehicle is insured, but the non-negligent owner is not. In time, Blum conceded

that he could not establish that Bruce was negligent, but he asserted that the 1st Auto policy provided UM benefits by virtue of the fact that Bruce did not have insurance for the vehicle.

¶ 10. The circuit court granted summary judgment to 1st Auto, concluding that the policy's UM provision could not reasonably be understood as supplementing the insurance available to an insured driver. It reasoned that "to ascribe the meaning plaintiff argues for would inescapably lead to the conclusion that plaintiff's uninsured motorist coverage covers insured motorists."

¶ 11. The court of appeals affirmed. Relying on part of the analysis in *Hemerley,* the court held that the language of the policy was ambiguous. *Blum,* 315 Wis. 2d 822, ¶ 10. The court then concluded, based on *Hemerley,* that "[a] reasonable person would understand the words in the policy to provide the coverage contemplated by the statute." *Id.,* ¶ 11 (quoting *Hemerley,* 127 Wis. 2d at 309–10). The court noted that, while *Hull* overruled *Hemerley*'s interpretation of § 632.32(4)(a), it did not implicate *Hemerley*'s conclusion that the contract was ambiguous and that a reasonable insured would interpret the contract to provide the statutorily required coverage. *Id.,* ¶ 14.

¶ 12. Because it concluded that the policy language was ambiguous but followed the statutory requirements, the court of appeals looked to the statute and this court's interpretation of the statute in *Hull* to resolve the ambiguity. *Id.,* ¶ 19. The court then noted that *Hull* "requires UM coverage whenever either the owner or the operator of a motor vehicle is allegedly negligent and not covered by liability insurance." *Id.* Applying this rule, the court concluded that UM coverage was not required because the negligent operator of the vehicle was covered by liability insurance. *Id.*

¶ 13. Blum petitioned this court for review, which we granted.

## II. STANDARD OF REVIEW

¶ 14. We review a circuit court's grant of summary judgment de novo, using the same methodology employed by the circuit court under Wis. Stat. § 802.08. *Smith v. Katz,* 226 Wis. 2d 798, 805, 595 N.W.2d 345 (1999). Under § 802.08(2), a court shall grant a motion for summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2).

¶ 15. This case involves the interpretation of an insurance policy and a statute. Both matters present questions of law that we review de novo, although we benefit from the analyses of the circuit court and court of appeals. *Hull,* 222 Wis. 2d at 636; *Clark v. American Family Mut. Ins. Co.,* 218 Wis. 2d 169, 173, 577 N.W.2d 790 (1998).

## III. DISCUSSION

¶ 16. This case presents three issues for our review. The first is whether Blum is entitled to compensation for his injuries under the UM provision of his policy with 1st Auto. The second is whether former Wis. Stat. § 632.32(4) required coverage under these facts, even if Blum's policy did not provide coverage.[2] The

[2] In his petition for review, Blum also raised the following issues: (1) Whether UM coverage should be determined by the ordinary meanings and definitions of terms set forth in the insurance policy or by the requirements of § 632.32(4); and

738

(2) third is whether a court of appeals decision possesses precedential value after it has been overruled by the supreme court. We address these issues in turn.

A. Coverage Under Blum's UM Policy

¶ 17. This case asks us to interpret 1st Auto's policy. Such an exercise requires us to apply well-established principles of contract interpretation and insurance policy construction. We begin our analysis with a review of these guiding principles.

¶ 18. An insurance policy is a contract and is interpreted by the same rules governing contract construction. *Gen. Cas. Co. of Wis. v. Hills,* 209 Wis. 2d 167, 175, 561 N.W.2d 718 (1997); *Kuhn v. Allstate Ins. Co.,* 193 Wis. 2d 50, 60, 532 N.W.2d 124 (1995). The primary objective of contract construction is to ascertain and give effect to the intent of the parties. *Johnson Controls, Inc. v. Employers Ins. of Wausau,* 2003 WI 108, ¶ 30, 264 Wis. 2d 60, 665 N.W.2d 257 (quoting *Hills,* 209 Wis. 2d at 175); *Maas v. Ziegler,* 172 Wis. 2d 70, 79, 492 N.W.2d 621 (1992). We determine the parties' intent by examining "the four corners of the insurance policy itself." *Sambs v. City of Brookfield,* 66 Wis. 2d 296, 317, 224 N.W.2d 582 (1975). The court must construe policy language "to mean what a reasonable person in the insured's position would understand it to mean." *Hull,* 222 Wis. 2d at 637; *Hills,* 209 Wis. 2d at 175.

---

whether an ambiguous policy should be construed in favor of the insured or the drafter. Both of these issues are encompassed in our analysis of whether Blum is entitled to coverage under either his UM policy or § 632.32(4).

¶ 19. When a policy is clear and unambiguous, it "should not be rewritten by construction to bind an insurer to a risk . . . it [never] contemplate[d] or [intended] to cover, and for which it was not paid." *Limpert v. Smith,* 56 Wis. 2d 632, 640, 203 N.W.2d 29 (1973). If a policy is ambiguous, the court construes terms that limit coverage against the drafter of the policy, e.g., the insurer. *Taylor v. Greatway Ins. Co.,* 2001 WI 93, ¶ 10, 245 Wis. 2d 134, 628 N.W.2d 916. The terms of a policy are ambiguous if they are "susceptible to more than one reasonable construction." *Smith v. Atlantic Mut. Ins. Co.,* 155 Wis. 2d 808, 811, 456 N.W.2d 597 (1990).

¶ 20. However, when considering the meaning of a particular term or provision, insurance policies, like other contracts, are to be read as a whole. *Liebovich v. Minn. Ins. Co.,* 2008 WI 75, ¶ 27, 310 Wis. 2d 751, 751 N.W.2d 764; *Folkman v. Quamme,* 2003 WI 116, ¶ 24, 264 Wis. 2d 617, 665 N.W.2d 857. As a result, it may be "necessary to look beyond a single clause or sentence to capture the essence of an insurance agreement," so that a policy is not "made ambiguous by isolating a small part from the context of the whole." *Id.,* ¶ 21.

¶ 21. The court of appeals held that the use of both the term "uninsured motorist" and the term "uninsured motor vehicle" created ambiguity in the UM provision. *Blum,* 315 Wis. 2d 822, ¶ 17. The term "uninsured motorist" appears eleven times in the policy, usually in the phrase "Uninsured Motorist Coverage", and also as the title for the section on "Uninsured Motorist" benefits.[3] The term "uninsured motor vehicle"

---

[3] In statutory construction, the title or heading of a statute is not part of the statute itself. Wis. Stat. § 990.001(6). By

appears four times, all within the Insuring Agreement under Part C—"Uninsured Motorist." The court of appeals' determination of "ambiguity" resulted from reading those two terms narrowly and in isolation, instead of looking to the policy as a whole.

¶ 22. Blum argues that he is entitled to coverage under the UM provision because the vehicle driven by Nicholas was uninsured. He submits that a vehicle that is uninsured is an "uninsured motor vehicle." 1st Auto's UM provision, he contends, does not require that the driver of an uninsured motor vehicle also have no insurance in order to trigger coverage under the UM policy. Hence, he argues, the fact that Nicholas, the driver, had insurance did not defeat Blum's UM coverage claim. Under this ingenious interpretation, the relevant inquiry is whether the motor vehicle, not the motorist, is uninsured.

¶ 23. We believe Blum's interpretation of the UM policy misinterprets both the purpose of UM insurance and the kind of coverage a reasonable person in the position of the insured would expect from this policy. We conclude that a reasonable insured, reading the policy as a whole, would not expect that the policy provides coverage under these circumstances. There are at least three reasons why the policy unambiguously does not provide coverage under the facts of this case: (1) the alleged tortfeasor is insured and no negligence is alleged on the part of the uninsured vehicle owner; (2) an

contrast, we attempt to construe contracts so that "each sentence, phrase or word used will have some meaning, and none of the language discarded as superfluous or meaningless." *D'Angelo v. Cornell Paperboard Products Co.*, 59 Wis. 2d 46, 50, 207 N.W.2d 846 (1973).

insurance policy applied to the vehicle at the time of the accident; and (3) the tortfeasor's insurance equals the insured's UM coverage.

¶ 24. First, the 1st Auto policy encompasses a requirement that the uninsured party is actually liable because of the party's negligence or because of some other basis for liability. The UM provision provides coverage for damages "which an insured is *legally entitled* to recover," and further provides that "[t]he owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle." (Emphasis added.) These qualifications on 1st Auto's liability are directly aligned with the general purpose of UM insurance, which is to "protect[] the insured from the *negligence* of the uninsured . . . motorist segment of the public by putting the insured in the same position he or she would have been in if the uninsured had liability insurance." 9 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance,* § 122:35 (3d ed. 1998). To accept Blum's argument would be to remove the element of negligence from the equation. Under Blum's interpretation, 1st Auto would be liable even when there was no negligence on the part of the driver or the owner, simply because the vehicle itself was not insured. The phrase "uninsured motor vehicle" cannot be stretched to such lengths.

¶ 25. Second, even if the UM policy were to provide coverage any time that a motor vehicle itself was uninsured, the vehicle driven by Nicholas would not fall within the policy's definition of an uninsured motor vehicle. The policy defines an uninsured motor vehicle as one to which "no bodily injury liability bond, or policy applies at the same time of the accident." Blum construes this phrase narrowly to mean a vehicle which is not itself insured. However, an insurance policy may

"apply" to a vehicle even though the vehicle itself is uninsured. "Apply" means: "To be pertinent or relevant; a rule that applies to everyone." *American Heritage Dictionary* 89 (3d ed. 1996).

¶ 26. If we ask whether there was an insurance policy pertinent or relevant to the vehicle involved in this accident, the answer is clearly yes. At the time of the accident, Nicholas was insured as a driver under a policy with American Standard. American Standard settled with Blum in the amount of $250,000 in exchange for a release from liability. The American Standard policy applied to the vehicle because the operator's liability policy was implicated by his operation of the vehicle. Therefore, even if 1st Auto's UM policy hinged on the insured status of the vehicle, rather than the motorist, Blum would not be eligible for coverage because the vehicle driven by Nicholas was not an uninsured motor vehicle under the policy.

¶ 27. Third, the presence of a valid reducing clause in 1st Auto's policy further supports the conclusion that a reasonable person in the position of the insured would not have expected UM coverage to apply in this case.[4] Under Wis. Stat. § 632.32(5)(i), a policy

---

[4] Blum urges us to find that 1st Auto waived its right to rely on the reducing clause because it first raised this argument in this court. As a matter of judicial economy, defenses not raised at the circuit court level are generally deemed to have been waived. *Dep't of Taxation v. Scherffius,* 62 Wis. 2d 687, 696–97, 215 N.W.2d 547 (1974). These concerns, however, are less relevant when new arguments are raised by respondents who seek "to uphold rather than reverse the result reached at trial." *State v. Holt,* 128 Wis. 2d 110, 124–25, 382 N.W.2d 679 (Ct. App. 1985). Furthermore, it is well-established law in Wisconsin that an appellate court may sustain a lower court's ruling "on a theory or on reasoning not presented to the lower court."

may reduce an insurer's liability for UM coverage by an amount "paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which payment is made." Part C of the Insuring Agreement governing UM coverage includes a section titled "Limit of Liability" mirroring the statutory language:

> A. The single limit of liability for one automobile shown in the Declarations for each person for uninsured motorist coverage is our maximum liability for all damages . . . arising out of bodily injury sustained by any one person.
>
> . . . .
>
> D. The limits of liability payable for this coverage will be reduced by:
>
> 1. Amounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which payment is made.

¶ 28. In other words, when an accident falling under the UM coverage results in payment to the insured by the tortfeasor, this provision reduces 1st Auto's liability by the amount of that payment. This provision reflects the parties' expectation that the insured would be covered only if a tortfeasor's lack of insurance placed the insured in a worse position than he or she would have been in if the tortfeasor had been insured.

██ ██

¶ 29. We have held that reducing clauses with common, ordinary language substantially similar to the

*Liberty Trucking Co. v. DILHR,* 57 Wis. 2d 331, 342, 204 N.W.2d 457 (1973). The validity and application of a reducing clause is a matter of law, and we may properly consider it as alternative grounds to find that Blum is not entitled to UM coverage.

statute are unambiguous when standing alone. *State Farm Mut. Auto. Ins. Co. v. Bailey,* 2007 WI 90, ¶ 26, 302 Wis. 2d 409, 734 N.W.2d 386. An otherwise unambiguous reducing clause may be rendered ambiguous, however, in the context of the entire policy. *See Folkman,* 264 Wis. 2d 617, ¶ 21. A policy that builds up false expectations, contains internally inconsistent provisions, or is so "deceptive that it befuddles the understanding and expectations of a reasonable insured" will be considered contextually ambiguous. *Id.*, ¶¶ 20, 31. 1st Auto's policy cannot be accused of these faults.

¶ 30. The Declarations page of the policy provides a summary of the most pertinent terms of coverage. On this page, the term "Uninsured Motorist Coverage" is immediately followed by a double asterisk which leads to the statement, two lines below: "Limits might be reduced by policy provision or law." Moreover, the reducing clause itself is found, not buried in fine print or an appendix, but in the same section of the policy governing UM coverage. There is nothing to create a misapprehension or give rise to conflicting interpretations in the mind of a reasonable insured as to the purpose and effect of the reducing clause. The clause is not contextually ambiguous.

¶ 31. When we consider the facts in light of this unambiguous reducing clause, the policy clearly does not provide UM coverage in this situation. Blum received $250,000 from American Standard in exchange for its release from liability. This payment recognizes American Standard's legal liability for Nicholas's negligence, and as such, it represents the exact payment contemplated in the limits of liability described above. Had he been eligible for UM coverage, Blum would have been entitled to $250,000 under his policy. Therefore, even if this accident had fallen within the terms of UM

coverage, Blum would not have been entitled to any payment from 1st Auto, because the settlement from American Standard exactly offset the amount to which he would have been entitled under the policy.

¶ 32.　This result confirms our conclusion that it is unreasonable for Blum to expect UM coverage in a situation where an applicable insurance policy for the operator has provided compensation for Blum's injuries equal to the limit on Blum's UM policy. The language of the policy, read as a whole, is unambiguous. A reasonable person in the position of the insured would not construe this policy as providing coverage when the insured has already recovered damages from an insured tortfeasor. Because the UM provision is unambiguous, we need not address whether this provision must be construed against 1st Auto as the drafter.

B.　Statutory Requirements for Uninsured Motorist Coverage

¶ 33.　Having concluded that the policy unambiguously does not provide coverage in this circumstance, we turn to whether the UM statute in effect at the time of the accident mandated coverage. The UM section provided, in relevant part:

> Required Uninsured Motorist and Medical Payments Coverages. Every policy of insurance subject to this section that insures with respect to any motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall contain therein or supplemental thereto provisions approved by the commissioner:
>
> (a) Uninsured Motorist. 1. For the protection of

persons injured who are *legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury,* sickness or disease, including death resulting therefrom, in limits of at least $25,000 per person and $50,000 per accident.

Wis. Stat. § 632.32(4) (emphasis added).

¶ 34. In *Hull,* this court interpreted the requirements of Wis. Stat. § 632.32(4) when the driver is insured but the motor vehicle is not. We concluded that "§ 632.32(4) requires UM coverage whenever *either the owner or the operator* of a motor vehicle is allegedly negligent and is not covered by liability insurance." *Hull,* 222 Wis. 2d 627 at 632 (emphasis added).

¶ 35. *Hull* involved two alleged tortfeasors: the driver of a vehicle that struck and killed the deceased and the owner of that vehicle who negligently maintained it. *Id.* at 633. The driver's use of the vehicle was insured, but the owner did not have a liability policy covering the vehicle or its operation. *Id.* at 632. State Farm denied Hull's spouse UM coverage on the grounds that the driver's use of the vehicle was insured and thus the vehicle was not an "uninsured motor vehicle" under the policy. *Id.* at 633. We held that Hull was entitled to UM coverage for the uninsured owner's negligence under a plain reading of her State Farm policies, but proceeded to consider her claim under the statute in the interests of furthering judicial economy. *Id.* at 640 n.7.

¶ 36. We held that the term "uninsured motor vehicle" was ambiguous in the statute, and examined the legislative purpose to determine whether Hull was entitled to coverage.[5] We described the purpose of

---

[5] The court of appeals had previously interpreted the statute in *Hemerley v. American Family Mutual Insurance Co.,* 127 Wis. 2d 304, 379 N.W.2d 860 (Ct. App. 1985). Faced with a

§ 632.32(4) as to place the insured in the same position as if the tortfeasor had been insured. *Id.* at 643–44. Where there were multiple tortfeasors, the fact that the driver was insured did not preclude Hull from seeking UM coverage for the acts of the uninsured owner as compensation for the insurance the negligent owner should have had. *Id.* at 646.

¶ 37. The factual scenario in the instant case is, essentially, the reverse of *Hull*. Hull sought coverage against an owner who was both negligent and uninsured. Blum seeks UM coverage because an owner was uninsured, even though he was not negligent. Blum asserts that the uninsured status of the vehicle is enough to provide coverage. His argument focuses on language in *Hull* concluding that the insured was entitled to UM coverage if either the owner or driver was uninsured, while glossing over the phrase restricting this coverage to situations in which the uninsured party is liable. To put it differently, under *Hull* a party is entitled to UM coverage if she can demonstrate that somebody—whether the owner or operator—was both negligent and uninsured. In *Hull*, the owner of the vehicle in question was allegedly both negligent and uninsured. Here, Blum alleged that Nicholas was neg-

similar factual scenario, the court of appeals concluded that the term "uninsured motor vehicle" was ambiguous as it appeared in the statute. *Id.* at 308. The court of appeals concluded that the statute contemplated only those motor vehicles where neither the owner nor the operator is insured in order for the insured to collect UM benefits. *Id.* at 310. Although the *Hull* court agreed with the *Hemerley* court's conclusion that the statute was ambiguous, it rejected *Hemerley*'s holding as contrary to the legislative purpose of § 632.32(4). *Hull*, 222 Wis. 2d at 644–46.

ligent, but Nicholas was insured. Blum could not allege that the uninsured party, Bruce, was negligent. Therefore, § 632.32(4), as interpreted in *Hull*, does not mandate coverage here.

¶ 38. Denying UM coverage under these circumstances furthers the purpose of the statute. The statute sought to provide coverage to an innocent victim for the negligence of an uninsured tortfeasor. *Hull*, 222 Wis. 2d at 646. It did not seek to establish a duplicative source of compensation where the only party with legal liability is insured. Had the vehicle in this case been covered by insurance, the insurance would not have compensated Blum unless he had established negligence or other liability on the part of the owner. Similarly, in the absence of negligence by the uninsured party, the statute does not mandate UM coverage.

¶ 39. In discussing *Hemerley*'s interpretation of the legislative purpose, *Hull* emphasized that "[i]n *Hemerley*, the sole alleged tortfeasor, the driver of the vehicle, was insured." *Id.* at 645. In *Hull*, both the driver and the owner were allegedly negligent. *Id.* at 645–46. The court noted that, in such circumstances, UM coverage was necessary to further the purpose of the statute:

> The only way in which to place Hull in the same position she would have been in, had the uninsured motorist been insured, is to require that UM coverage be provided to her. In the absence of UM coverage for the owner's alleged negligence, Hull would be denied a source of compensation for the owner's alleged negligence, even though the driver's alleged negligence would be covered under the driver's Milwaukee Mutual insurance policy.

*Id.* at 646.

¶ 40. The *Hull* court's emphasis on the differences between the facts in *Hull* and the facts in *Hemerley* further supports the conclusion that mandating coverage here would not further the purpose of § 632.32(4). Unlike Hull, Blum was not "denied a source of compensation for the owner's alleged negligence." *Id.* He was provided a source of compensation—$250,000 under the American Standard policy—for the only negligence he alleged: the driver's.

¶ 41. In sum, *Hull's* interpretation of § 632.32(4) conclusively resolves the statute's application to these facts. Because Blum alleged negligence only on the part of the insured driver, § 632.32(4) does not mandate UM coverage.

C. Precedential Value of Overruled Court of Appeals Decisions

¶ 42. We next address whether a court of appeals decision retains any precedential value when it is overruled by this court. We hold that when the supreme court overrules a court of appeals decision, the court of appeals decision no longer possesses any precedential value, unless this court expressly states otherwise.

¶ 43. In this case, the court of appeals relied on *Hemerley* to support its interpretation of the policy. *Blum,* 315 Wis. 2d 822, ¶ 9. In *Hull,* this court held: "For the sake of clarity, we choose to overrule *Hemerley* rather than limit it to its facts." *Hull,* 222 Wis. 2d at 646 n.12. The court of appeals reasoned that, because *Hull's* ruling on the construction of the statute did not implicate *Hemerley's* interpretation of the policy, *Hemerley's* holding on the policy remained precedential. *Blum,* 315 Wis. 2d 822, ¶¶ 14, 17.

¶ 44. The court of appeals has developed a body of law regarding the precedential value of its reversed and

overruled opinions. As applied by the court of appeals, "[t]he general rule is that *holdings not specifically reversed* on appeal retain precedential value." *Sweeney v. Gen. Cas. Co. of Wis.,* 220 Wis. 2d 183, 192, 582 N.W.2d 735 (Ct. App. 1998) (emphasis added). The court first described this rule in *Spencer v. Brown,* although it declined to apply the rule under the specific circumstances of that case. *Spencer v. County of Brown,* 215 Wis. 2d 641, 650–51, 573 N.W.2d 222 (Ct. App. 1997). It has since applied this rule on several occasions. *See, e.g., Schauer v. Diocese of Green Bay,* 2004 WI App 180, ¶ 15, 276 Wis. 2d 141, 687 N.W.2d 766; *Peace Lutheran Church & Academy v. Village of Sussex,* 2001 WI App 139, ¶ 15 n.5, 246 Wis. 2d 502, 631 N.W.2d 229; *State v. Byrge,* 225 Wis. 2d 702, 717–18 n.7, 594 N.W.2d 388 (Ct. App. 1999), *aff'd,* 2000 WI 101, 237 Wis. 2d 197, 614 N.W.2d 477.

¶ 45. The general rule developed by the court of appeals applied to cases that were reversed on direct review by this court. *Blum,* 315 Wis. 2d 822, ¶ 16. However, the court of appeals in this case reasoned that the rule should also apply where the court of appeals was overruled by this court while this court was reviewing another case. *Id.*

¶ 46. We now hold that it was error for the court of appeals to rely on *Hemerley,* because *Hemerley* no longer possessed any precedential value. Unless this court explicitly states otherwise, a court of appeals opinion overruled by this court no longer retain any precedential value. This conclusion is supported by the constitutionally designated purposes of this court and the court of appeals, as well as practical considerations.

¶ 47. First, retaining precedential value in overruled court of appeals decisions would not serve the purposes of the supreme court or the court of appeals.

In *Cook v. Cook,* this court compared the roles of the supreme court and the court of appeals. *Cook v. Cook,* 208 Wis. 2d 166, 188–89, 560 N.W.2d 246 (1997). The court of appeals' "primary function is error correcting. Nevertheless under some circumstances it necessarily performs a second function, that of law defining and law development." *Id.* at 188. The court went on to describe the purposes of the supreme court:

> In contrast, the supreme court's primary function is that of law defining and law development. . . . The purpose of the supreme court is to oversee and implement the statewide development of the law. The supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case.

*Id.* at 189 (internal quotations and citations omitted).

¶ 48. This purpose is reflected by the manner in which this court accepts and reviews cases. Our Internal Operating Procedures state that our "principal criterion in granting or denying review is not whether the matter was correctly decided or justice done in the lower court, but whether the matter is one that should trigger the institutional responsibilities of the Supreme Court." Wis. S. Ct. IOP (Jan. 1, 2010). Similarly, we have interpreted our discretionary reversal power broadly as part of our "law-developing or law-declaring function." *State v. Schumacher,* 144 Wis. 2d 388, 407, 424 N.W.2d 672 (1988). Thus, we have said that we may reach issues "of great public importance," even if they are moot or the parties would not ordinarily have standing to raise them. *Id.* at 405. We also have said that we will decide moot issues that may recur for which "guidance is needed for the trial courts." *Id.* at 405–06. Because the court of appeals is "charged primarily with error

correcting in the individual case," *Id.* at 407 (quoting *State ex rel. Swan v. Elections Board,* 133 Wis. 2d 87, 93–94, 394 N.W.2d 732 (1986)), we have declined to give the court of appeals the same broad power of discretionary reversal, *id.* at 408.

¶ 49. Thus, when this court accepts review of a case, it does so to clarify and develop the law and provide guidance for lower courts. This purpose would not be served by requiring this court to address specifically every holding in a court of appeals decision to protect the coherence of this court's holding. Such a rule would expand this court's "error-correcting" role by requiring the supreme court to repudiate each holding in a court of appeals decision that may be incorrect. If questions remained about the precedential value of a court of appeals decision once the supreme court had overruled that decision, the law-developing value of this court's decision would be jeopardized.

█

¶ 50. The primary function of the court of appeals is error correction. As discussed in *Cook,* the court of appeals' law-developing role is secondary and arises only "under some circumstances," as the court is required to "adapt[] the common law and interpret[] the statutes and federal and state constitutions in the cases it decides." *Cook,* 208 Wis. 2d at 188. The court of appeals' primary function—error correction—does not require recognizing the precedential value of parts of published opinions that have been overruled.

¶ 51. The court of appeals' ability to function as an error-correcting court is strengthened by our holding as it clarifies the precedential status of overruled cases. The court of appeals is in a better position to

apply established law when there is a bright-line rule nullifying the precedential value of an overruled court of appeals decision.

¶ 52. This policy concern is highlighted by some of the confusion that has resulted from the court of appeals' current rule. For example, in *Spencer*, the court declined to apply the rule where this court had explained that its "decision should not be taken as approval of the reasoning of the Court of Appeals on that issue." *Spencer*, 215 Wis. 2d at 650–51 (quoting *Anderson v. City of Milwaukee*, 208 Wis. 2d 18, 559 N.W.2d 563 (1997)). In *Byrge*, the court of appeals noted that "it is not clear whether this general rule should apply when the message from the supreme court is that the court of appeals should not even have addressed the issue in the first instance." *Byrge*, 225 Wis. 2d at 717–18 n.7. In *Sweeney*, one party argued that the rule should not apply because this court's decision to decide a case on different grounds "disavowed" the court of appeals' earlier ruling. *Sweeney*, 220 Wis. 2d at 192–93. The court of appeals rejected that argument, noting that, "when the supreme court wants to disavow our reasoning, or, at least, prevent any implicit approval of our reasoning, it does so expressly." *Id.* at 193.

¶ 53. The court of appeals itself expressed concerns as to the validity of its current rule by certifying the question to this court. *Byrge*, 225 Wis. 2d at 717–18 n.7. Although the court did not grant certification of the question at that time, Chief Justice Abrahamson noted five years later that the matter was still unresolved: "While the court of appeals apparently treats all or parts of its decisions as precedential even after this court has reviewed them, the question of the precedential value of a court of appeals decision that has been reviewed by this court has not been decided by this

court." *State v. Gary M.B.*, 2004 WI 33, ¶ 44 n.1, 270 Wis. 2d 62, 676 N.W.2d 475 (Abrahamson, C.J., dissenting). Shortly thereafter, the court of appeals again noted that "we have also expressed some concern about applying that principle in certain situations." *Ten Mile Inv. v. Sherman*, 2007 WI App 253, ¶ 15, 306 Wis. 2d 799, 743 N.W.2d 442. By providing a bright-line rule, we seek to eliminate the confusion that has surrounded this issue.

¶ 54. One might argue that the court of appeals' current rule serves to fill in the "gaps" not expressly addressed by this court. But these cases suggest that the court's rule has *not* been consistently applied and has created more confusion than clarity. Circuit courts should not be forced to engage in legal analysis as to precisely which holdings in court of appeals decisions are still good law, or whether, based on some particular language in the supreme court decision, the general rule should not be applied. A bright-line rule that this court overrules a court of appeals decision in its entirety, unless it expressly states otherwise, will prevent this kind of confusion.

¶ 55. The public and litigants are entitled to clear and understandable legal rules. Litigants do not benefit when they are put in the position of relying on a decision that is of questionable precedential value; relying on a decision that cites such a decision; or having their case decided upon precedent that this court had intended to overrule but had not said so expressly. This principle applies not only to litigants before trial courts and the court of appeals, but also to the public as a whole, which is equally entitled to consistency in the law. Therefore, our holding today not only clarifies the law for circuit courts and litigants, but also clarifies the law for the public as a whole.

¶ 56. For these reasons, we conclude that a court of appeals decision expressly overruled by this court no longer retains any precedential value, unless this court expressly states that it is leaving portions of the court of appeals decision intact. Although we affirm the court of appeals, it was error for the court to rely on *Hemerley* as authority for its interpretation of the policy language.

## IV. CONCLUSION

¶ 57. We conclude the following:

A. The UM policy in this case is unambiguous and does not provide UM coverage when the owner of an uninsured motor vehicle was not negligent. The provisions on liability in the UM policy, read separately or as a whole, do not contemplate coverage when the owner of an uninsured vehicle is not negligent and has no other basis of liability for an accident.

B. Former Wis. Stat. § 632.32(4) did not mandate coverage in a situation where the sole alleged tortfeasor was insured and his insurance equaled the level of UM coverage in the injured insured's policy.

C. A court of appeals decision loses all precedential value when it is overruled by this court. Although the court of appeals correctly concluded that UM coverage was unavailable on these facts, it should not have relied on *Hemerley* to reach this conclusion because that decision no longer possessed any precedential value.

Therefore, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 58. ANN WALSH BRADLEY, J. (*concurring in part, dissenting in part*). I agree with the majority that

756

after the supreme court has overruled a court of appeals decision, that court of appeals decision no longer possesses any precedential value, unless this court has expressly stated otherwise. Majority op., ¶ 42. Therefore, I join Part III C of the majority opinion in full.

¶ 59. I part ways with the majority, however, on the interpretation and application of this insurance policy. The majority correctly explains that the purpose of uninsured motorist (UM) coverage under Wis. Stat. § 632.32(4) is to "place the insured in the same position as if the tortfeasor had been insured." *Id.*, ¶ 36.

¶ 60. I also agree with the majority that the parties' expectation is that the UM insured (Blum) would be covered under the UM policy "if a tortfeasor's lack of insurance placed the insured in a worse position than he or she would have been in if the tortfeasor had been insured." *Id.*, ¶ 28.

¶ 61. Both the purpose of UM coverage and the expectations of the parties are that the UM insured should not be in a worse position just because the tortfeasor did not have coverage under an automobile liability policy. *See Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 643–44, 586 N.W.2d 863 (1998). Yet, under the majority's analysis Blum is in a worse position. Why is this?

¶ 62. It is because the majority fails to recognize that if the father's vehicle had been insured, the son-tortfeasor would have been a named insured under the father's policy as a resident of the household. Blum, then, would be in a better position because he would have had two liability policies from which to seek recovery instead of one.

¶ 63. He could seek recovery from the liability policy covering the vehicle, which would have provided coverage for injuries caused by the son's negligence.

757

Further, because the son also had his own liability policy, Blum would have been able to recover from that policy as well.

¶ 64. It is on this precise point that the majority's analysis falters. It is built around the false premise that Blum is not in a worse position because he was not "denied a source of compensation" for his injuries. Majority op., ¶ 40. The majority contends that, "[h]ad the vehicle in this case been covered by insurance, the insurance would not have compensated Blum unless he had established negligence or other liability on the part of the owner." *Id.*, ¶ 38. This statement is simply incorrect. As a member of the father's household, the son-tortfeasor would be considered a named insured on a liability policy the father took out covering the vehicle.[1]

¶ 65. When I examine the policy, I conclude that it is ambiguous and should be construed in favor of coverage. Because 1st Auto did not raise the issue of the reducing clause until its response brief in this court, I would not make any determinations about the validity of the reducing clause. Rather, I would remand to the circuit court for full development of the issue and a determination of whether the reducing clause applies to reduce Blum's UM compensation. Accordingly, I respectfully concur in part and dissent in part.

I

¶ 66. The majority provides three reasons to support its conclusion that the policy unambiguously does not provide coverage here: (1) Blum is not "legally

---

[1] *See* Wis. Stat. § 632.32(6)(b) ("No policy may exclude from the coverage afforded or benefits provided: (1) Persons related by blood, marriage or adoption to the insured.").

entitled to recover" damages from the "owner" of the vehicle; (2) the vehicle is not an uninsured motor vehicle because the driver's policy "applied" to the vehicle at the time of the accident; and (3) even if Blum's policy provided coverage, the reducing clause would reduce Blum's recovery to $0. *See id.,* ¶ 23. I address each of the majority's conclusions in turn.

¶ 67. I begin with the UM insuring agreement. It provides: "We will pay compensatory damages which an insured is *legally entitled to recover* from the *owner or operator* of an uninsured motor vehicle[.]" (Emphasis added.) The majority's focus is on the damages that Blum would be entitled to recover from Bruce Burch, the owner of the vehicle. *Id.,* ¶ 24. It asserts that because Bruce Burch was not negligent, Blum is not legally entitled to recover compensatory damages from the owner or operator of the vehicle. *Id.* It contends that Blum's interpretation "remove[s] the element of negligence from the equation." *Id.*

¶ 68. This conclusion misses the mark. By focusing on whether Blum would be entitled to recover damages from the owner of the vehicle, the majority ignores the fact that Blum is legally entitled to recover damages from the operator of the vehicle, Nicholas Burch, who was negligent.[2] Blum's interpretation does not remove the element of negligence from the equation.

---

[2] Prior to the lawsuit, Blum entered into a settlement agreement with Nicholas Burch and his insurer, American Standard. Depending upon its terms, the settlement agreement could affect Blum's entitlement to proceeds arising out of Nicholas Burch's negligent operation of the uninsured motor vehicle. Nevertheless, the settlement agreement would not change the interpretation of the UM policy, which is the larger question at issue here.

¶ 69. A liability policy taken out on a vehicle covers more than the liability incurred by the vehicle's owner. It also covers liability incurred by other insureds when they are driving that vehicle. Had there been a liability policy on the vehicle, Blum would have been legally entitled to recover compensatory damages from that policy due to Nicholas Burch's negligence. He also would have been entitled to recover compensatory damages from Nicholas Burch's separate American Standard policy.

## II

¶ 70. I turn to the policy definition of an "uninsured motor vehicle." It provides that an uninsured motor vehicle is a land motor vehicle "[t]o which no bodily injury liability bond, or policy applies at the same time of the accident."

¶ 71. Blum asserts that any vehicle that does not have an insurance policy is an uninsured motor vehicle. On its face, this interpretation sounds reasonable.

¶ 72. Yet, the majority casts aside Blum's interpretation of the policy, calling it "ingenious." Majority op., ¶ 22. It focuses instead on the word "applies." *Id.*, ¶ 25. Citing a dictionary definition of "apply," it asserts that a policy may apply to a vehicle even if the vehicle is uninsured. It concludes that this vehicle was not an uninsured motor vehicle at the time of the accident because Nicholas Burch's American Standard policy was "implicated."

¶ 73. Contrary to the majority, I conclude that a reasonable insured would likely interpret the language to mean that a policy "applied" to a vehicle if there was a liability policy on that vehicle. With this understanding, a reasonable insured would determine that no policy applied to the vehicle driven by Nicholas Burch.

¶ 74. Even if the majority's interpretation of the policy term "applies" is also reasonable, the policy language would be rendered ambiguous. Ambiguous language in an insurance policy is construed in favor of coverage. *Folkman v. Quamme,* 2003 WI 116, ¶ 13, 264 Wis. 2d 617, 665 N.W.2d 857.

## III

¶ 75. Finally, I examine the majority's application of the reducing clause. It may well be that the reducing clause is valid and could be applied to reduce Blum's recovery. However, 1st Auto did not raise the issue of the reducing clause in the circuit court or in the court of appeals. The reducing clause was not raised until 1st Auto filed its response brief in this court.

¶ 76. As a general rule, issues not raised in the circuit court will not be considered for the first time on appeal. *Marotz v. Hallman,* 2007 WI 89, ¶ 16, 302 Wis. 2d 428, 734 N.W.2d 411. This court may, however, use its discretion to decide an issue that was not raised in the circuit court when that issue is a question of law, briefed by both parties, and of sufficient public interest to merit a decision. *Id.*

¶ 77. Not all reducing clauses are valid. Some are unenforceable because they are ambiguous—either in isolation or in the context of the policy as a whole, and others are unenforceable because they are contrary to law. *See, e.g., Badger Mut. Ins. Co. v. Schmitz,* 2002 WI 98, ¶ 7, 255 Wis. 2d 61, 647 N.W.2d 223. At oral argument, Blum's attorney asserted that 1st Auto's reducing clause might be unenforceable, but because 1st Auto did not raise the issue until the last moment, these arguments had not been explored. He asserted:

"We have not researched it, we have not briefed it. There was no possibility of doing that in a reply brief." Given that the issue of the reducing clause has not been fully briefed and argued, I conclude that it should not be decided by this court.

¶ 78. In sum, I determine that Blum's UM policy is ambiguous, and I construe it in favor of coverage. I would remand to the circuit court for further briefing and arguments about the validity of the reducing clause and for a determination of whether Blum's recovery should be reduced. Accordingly, I respectfully concur in part and dissent in part.

¶ 79. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this concurrence/ dissent.

¶ 80. PATIENCE DRAKE ROGGENSACK, J. (*concurring in part and dissenting in part*). I concur in and join the majority opinion's conclusion that the uninsured motorist policy in this case is unambiguous and does not provide coverage when the owner of the uninsured vehicle was not negligent. I also concur in and join the majority's conclusion that Wis. Stat. § 632.32(4)(a) does not mandate coverage under these circumstances.

¶ 81. However, I dissent from the majority's conclusion that a court of appeals decision loses all precedential value when it is overruled in part by this court.[1] I dissent because this conclusion is unnecessary to the resolution of the merits of this case; it is made without identifying a problem requiring this change; and it is made without input from the many Wisconsin judges and lawyers who will be impacted by the court's decision.

---

[1] Majority op., ¶ 42.

## I. BACKGROUND

¶ 82. Whether a court of appeals opinion that has been overruled on other grounds retains any precedential value for its other holdings has no relevance to the merits of this appeal. Rather, we address it because Chief Justice Abrahamson has long promoted a supreme court rule requiring that an overruled court of appeals decision becomes a nullity. *See, e.g., State v. Gary M.B.,* 2004 WI 33, ¶ 44 n.1, 270 Wis. 2d 62, 676 N.W.2d 475 (Abrahamson, C.J., dissenting) ("My own view at this time is that when this court reviews a decision of the court of appeals, the court of appeals decision no longer has precedential value."); *Bergmann v. McCaughtry,* 211 Wis. 2d 1, 10 n.8, 564 N.W.2d 712 (1997).

¶ 83. Kevin Blum set the stage for this discussion when he argued that the court of appeals erred by employing reasoning from *Hemerley v. American Family Mutual Insurance Co.,* 127 Wis. 2d 304, 379 N.W.2d 860 (Ct. App. 1985), which was overruled by *Hull v. State Farm Mutual Automobile Insurance Co.,* 222 Wis. 2d 627, 586 N.W.2d 863 (1998). Blum's argument permitted the court to address its treatment of court of appeals opinions that are overruled in part.

## II. DISCUSSION

¶ 84. Whether a court of appeals opinion that has been overruled in part retains any precedential value is a policy question for this court. However, no matter how this policy question is resolved, it will not affect the court's substantive decision in regard to Blum's claims.

¶ 85. The majority opinion begins its discussion recognizing that as a general rule, holdings of a court of appeals decision not specifically overruled by the Wis-

consin Supreme Court or the United States Supreme Court retain their precedential value.[2] The majority cites to *Sweeney v. General Casualty Co. of Wisconsin,* 220 Wis. 2d 183, 192, 582 N.W.2d 735 (Ct. App. 1998) for this proposition. The majority opinion explains that the court of appeals "first described" this generalized rule in *Spencer v. City of Brown,* 215 Wis. 2d 641, 650–51, 573 N.W.2d 222 (Ct. App. 1997).[3]

¶ 86. Although it is true that the rule may have been first described by the court of appeals in *Spencer,* we cited court of appeals opinions for propositions of law that are not overruled before *Spencer. See, e.g., State v. Williams,* 148 Wis. 2d 852, 855, 436 N.W.2d 924 (Ct. App. 1989) (relying on *Town of Two Rivers v. DNR,* 105 Wis. 2d 721, 315 N.W.2d 378 (Ct. App. 1981), *overruled on other grounds by Milwaukee Metro. Sewerage Dist. v. DNR,* 126 Wis. 2d 63, 72, 375 N.W.2d 649 (1985)).

¶ 87. Both the Wisconsin Supreme Court and the court of appeals have cited to legal principles in court of appeals decisions that have been overruled in part. *See, e.g., Folkman v. Quamme,* 2003 WI 116, ¶ 64, 264 Wis. 2d 617, 665 N.W.2d 857 (citing *Mills v. Wis. Mut. Ins. Co.,* 145 Wis. 2d 472, 427 N.W.2d 397 (Ct. App. 1988), *overruled on other grounds by West Bend Mut. Ins. Co. v. Playman,* 171 Wis. 2d 37, 489 N.W.2d 915 (1992); *State v. Orta,* 2000 WI 4, ¶ 23, 231 Wis. 2d 782, 604 N.W.2d 543 (citing *State v. Friday,* 140 Wis. 2d 701, 412 N.W.2d 540 (Ct. App. 1987), *overruled on other grounds by State v. Friday,* 147 Wis. 2d 359, 434 N.W.2d 85 (1989)); *State v. Eugenio,* 219 Wis. 2d 391, 412, 579 N.W.2d 642 (1998) (citing *Wikrent v. Toys "R" Us, Inc.,* 179 Wis. 2d 297, 507 N.W.2d 130 (Ct. App. 1993),

[2] *Id.,* ¶ 44.

[3] *Id.*

*overruled on other grounds by Steinberg v. Jensen,* 194 Wis. 2d 439, 534 N.W.2d 361 (1995)); *C. Coakley Relocation Sys., Inc. v. City of Milwaukee,* 2007 WI App 209, ¶ 16, 305 Wis. 2d 487, 740 N.W.2d 636 (citing *City of Janesville v. CC Midwest, Inc.,* 2006 WI App 21, 289 Wis. 2d 453, 710 N.W.2d 713, *overruled on other grounds by City of Janesville v. CC Midwest, Inc.,* 2007 WI 93, 302 Wis. 2d 599, 734 N.W.2d 428).

¶ 88. The citation rule in federal court is different than that proposed by the majority. In federal court, a "reversed" opinion can be cited for principles that were not reversed, but an opinion that has been "vacated" has no precedential authority. *Durning v. Citibank, N.A.,* 950 F.2d 1419, 1424 n.2 (9th Cir. 1991) (citing *O'Connor v. Donaldson,* 422 U.S. 563, 578 n.12 (1975)). " '[V]acating the judgment of the Court of Appeals deprives that court's opinion of precedential effect, leaving this Court's opinion and judgment as the sole law of the case.' " *Id.* (quoting *O'Connor,* 422 U.S. at 578 n.12); *see also Newdow v. Congress of the United States of Am.,* 383 F. Supp. 2d 1229, 1240 (E.D. Cal. 2005); Charles A. Sullivan, *On Vacation,* 43 Hous. L. Rev. 1143, 1148 (Winter 2006) (commenting that "a vacated opinion is not precedent in the sense that it binds anyone; but such opinions may remain persuasive," but "a decision reversed on other grounds is not merely persuasive but also binding").

¶ 89. The nomenclature by which an appellate court describes its action in regard to a decision it has reviewed is varied. A decision may be reversed, overruled or vacated, in its entirety or in part. Each of those terms has a different meaning. A decision is "reversed" in "[a]n appellate court's overturning of a lower court's decision." *Black's Law Dictionary* 1433 (9th ed. 2009). A decision is "overruled" when it is "set aside [as] prece-

dent[] by expressly deciding that it should no longer be controlling law." *Id.* at 1213. A decision is "vacated" in order "to nullify or cancel; make void; [or] invalidate" the decision. *Id.* at 1688. There may be good reasons to treat differently court of appeals decisions that are reversed, overruled and vacated; however, no one has explored this issue. Until there is further study, it would be cavalier to decide it.

¶ 90. Moreover, it remains uncertain how the majority's holding will impact the manner in which Wisconsin cases are classified on Westlaw and LexisNexis, the premiere online legal research services. Both research services use symbols to indicate how other case law has affected a particular opinion. The symbols indicate neutral, positive, cautionary or negative treatment. In Westlaw, a case that has been expressly overruled generally has a red flag and the statement, "No longer good for at least one point of law."[4] However, when a case is reversed, rather than overruled, Westlaw shows the same red flag and cautionary statement.[5]

¶ 91. The majority opinion addresses only "overruled" court of appeals decisions. It does not prevent the use of legal principles from a decision that is "reversed."

¶ 92. Furthermore, whether a court of appeals decision loses all precedential value when it is overruled in part by this court was given little attention by the parties. On only five pages of Blum's brief, was the issue the majority takes up mentioned. There, Blum's argu-

---

[4] *See, e.g., Hemerley v. Am. Family Mut. Ins. Co.,* 127 Wis. 2d 304, 379 N.W.2d 860 (Ct. App. 1985), *overruled by Hull v. State Farm Mut. Auto. Ins. Co.,* 222 Wis. 2d 627, 632, 586 N.W.2d 863 (1998).

[5] *See, e.g., Hull v. State Farm Mut. Auto. Ins. Co.,* 215 Wis. 2d 323, 572 N.W.2d 902 (Table) (Ct. App 1997), *rev'd,* 222 Wis. 2d 627, 632, 586 N.W.2d 863 (1998).

ment focused on his contention that the court of appeals erred because it relied in part on *Hemerley,* citing Chief Justice Abrahamson's dissenting opinion in *Gary M.B.,* 270 Wis. 2d 62, ¶ 44. The respondent, 1st Auto & Casualty Insurance Co., devoted less than one page of its brief to the issue. At oral argument, the court was unable to obtain further assistance from counsel.

¶ 93. And finally, neither the discussion of the appellant nor the respondent provided any background or context in which to place this issue. For example, neither party addressed how many times cases cited as "overruled on other grounds" have been used in subsequent cases; whether changing the rule would cause a hardship for lawyers or for trial and appellate judges who have relied on these cases for foundational legal principles; or whether some other rule might better serve the bench and the bar. However, notwithstanding the lack of information provided to the court on this complicated question, the majority pushes ahead.

## III. CONCLUSION

¶ 94. In my view, a better approach would be to refer the issue to the judicial council, so that input can be obtained from the bench and the bar. It would also be useful to study how other states treat opinions that are overruled in part, as well as learning how the federal rule has operated throughout the 50 states.

¶ 95. Because I believe we have undertaken a new rule without adequate knowledge upon which to base our decision, I respectfully dissent from the portion of the majority's opinion that unnecessarily concludes that court of appeals decisions overruled by this court no longer retain any precedential value.

¶ 96. I am authorized to state that Justices AN-NETTE KINGSLAND ZIEGLER and MICHAEL J. GABLEMAN join this concurrence/dissent.